By the Court.—Sedgwick, Ch. J.
—One question only is presented upon this appeal. It is whether, on the trial, it was shown that the plaintiff.- Gomez was a copartner of the other plaintiff, doing business under the firm name of Arguimbau, Wallis & Co.
The following facts were proved: The plaintiffs, Arguimbau and Wallis, made in writing a copartnership agreement. In it, with the usual articles, was the provision that the profits and losses should be divided in the following manner, that is ; 45 per cent., to Arguimbau and 25 per cent, to Wallis ; that 30 per cent, should be left undivided; and if no other provisions as to them should be made, that they should be divided pro rata between Arguimbau and Wallis. This agreement was executed April 3, 1879. The business continued under it until the events next to be stated.
In November, 1879, the plaintiff Wallis wrote to Gomez a letter, which the plaintiff Arguimbau signed in his own name. It offered to Mr. Gomez, “of the mercantile contract effected for three years, from April 3, 1879, between Guillermo M. Wallis and myself, 30 per cent, of the profits that may result under the said contract, and of which I represent 75 per cent-., you to answer with the credit you may have with the firm of Gomez & Arguimbau and Arguimbau, Wallis & Co., and also in person for any loss that may occur. I further answer you, for your subsistance, for the amount of £400 per annum.” On the next day Mr. Gomez, answered in writing, to the letter, that the contents of the *255 latter “being in perfect conformity with our arrangement, I have merely to repeat that same are accepted.”
These facts show that by agreement between both of the original partners, Mr. Gomez because entitled to 30 per cent, of the profits of the partnership business and also liable for the losses. He therefore, was a partner of the other two plaintiffs.
The argument to the contrary, proceeds upon the assertion that Mr. Gomez, under the letters that have been recited, became entitled, not to a share of the profits of the business, but a share of such profits as Mr. Arguimbau might be entitled to have out of the business. The only countenance for this, is the phrase “and of which I represent 75 per cent.” An additional clause of the copartnership agreement, not yet given, clears this. That clause was that the 30 per cent, of the profits left undivided and not provided for “ will be credited to Daniel V. Arguimbau and it is understood that, when both parties of this contract agree to, they may, annually divide part, or the whole, of the profits.” This shows that this 30 per cent, of the profits did not belong to Mr. Arguimbau, and 75 percent, were represented by him, inasmuch as he owned 45 per cent, and had credited to him 30 per cent., although in fact he did not own a right to the latter. The arrangement with M. Gomez was in reality a provision as to the disposition of the 30 per cent, which the copartnership agreement, expressed as a possibility in the future.
It was argued that the judge below erred in holding that the evidence proved Mr. Gomez to have been a partner, inasmuch as, by the case, he declared that he made such ruling upon the documents alone, apart from any extrinsic evidence, and without extrinsic evidence the papers did not show that Mr. Wallis had agreed to the arrangement with Mr. Gomez. It is not possible to believe that the judge meant to say that, in connection with the papers, he disregarded the significant fact that Mr. Wallis had written one of the letters: But if he had so meant, it *256 would be the duty of the general term to find whether the «case as it was, did not support his conclusion.
Judgment affirmed with costs, and order appealed from affirmed with $10 costs.
Ingraham, J., concurred.